UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY ANTHONY WOODFORK,<br><br>              Petitioner,<br>v.<br><br>MATTHEW CATE, Secretary of the California Department of Corrections and Rehabilitation,<br><br>              Respondent. | Case No. 09cv1543-JM (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND ORDER DENYING MOTIONS FOR EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL [Doc. Nos. 13, 15, 18, 20]** |

This Report and Recommendation is submitted to United States District Judge Jeffrey Miller pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On July 15, 2009, Petitioner, a state prisoner proceeding *pro se* and *in forma pauperis*, filed the current Petition for Writ of Habeas Corpus. Doc. No. 1 ("Pet."). Petitioner challenges his state court conviction of receiving stolen property, arguing that there was insufficient evidence to support the finding that he knowingly possessed stolen property. Doc. No. 1-2 ("Pet'r Mem.")[1] at 1. On September 28,

---

[1] Under the first (and only) ground for relief in his Petition, Petitioner wrote "Insufficient Evidence" and then directed the Court to an attached copy of his opening brief on direct appeal, which elucidates his sufficiency of the evidence claim before

2009, Respondent Matthew Cate filed an answer requesting that the Petition be denied. Doc. No. 9 ("Answer"). Petitioner filed a traverse on October 15, 2009. Doc. No. 10 ("Traverse").

This Court has considered the above documents as well as the record as a whole. Based thereon, and for the reasons set forth below, this Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the California Court of Appeal's opinion on direct review in People v. Jeffrey Anthony Woodfork, No. D052472, slip op. (Cal. Ct. App. September 12, 2008). See Lodgment 5. This Court presumes the state court's factual determinations to be correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1)("a determination of a factual issue made by a State court shall be presumed to be correct"); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).

> In the early morning hours of October 1, 2007, the security alarm sounded at the law firm of Grace Hollis Lowe Hanson & Schaeffer (Grace Hollis). Michael Simpson, the systems administrator at Grace Hollis, later arrived at work to find the office had been burglarized. He initially noticed four laptop bags, a digital camera and a set of keys from his office were missing. Simpson also noticed the absence of a bottle of tequila remaining from an office party.
>
> That same morning, Woodfork and Grace Sandoval rode the trolley to El Cajon. Woodfork originally met Sandoval at a sober living facility, but because of an altercation she no longer lived at the facility. Instead, Sandoval often slept

---

that court. This Court presumes Petitioner wishes to adopt the arguments from that brief in his current Petition.

>       in her car.  While on the trolley Woodfork and Sandoval met
> Zeat Martinez.  Martinez saw that Woodfork and Sandoval
> carried computer bags and a bottle of alcohol.  During the
> trolley ride, Woodfork showed Martinez one of the computers
> and offered to sell the laptop for $1,000.  After Martinez
> refused, Woodfork reduced the asking price to $500.  (*Ibid*.)
> (sic) Martinez also rejected that price but told Woodfork he
> would pay $100.  Woodfork, Sandoval and Martinez then left
> the trolley and walked to an abandoned apartment building to
> determine whether the computer worked.
>
>       Police Officer Joseph Crawford was on patrol in the area
> when he noticed the three individuals by the apartment
> building with an open bottle of tequila on the wall between
> Woodfork and Martinez.  Crawford approached them and searched
> Woodfork and Sandoval.  He found a pair of gloves, a
> screwdriver, a pocket knife and a set of keys on Woodfork.
> He found a digital camera in Sandoval's purse.  A security
> tag attached to the camera identified it as "Property of
> Grace Hollis" and included an identification number and a bar
> code.  Crawford also saw four canvas laptop bags against the
> back side of the wall.  He asked to whom the laptops belonged
> and Woodfork and Sandoval both responded, "Those are ours."
> He asked Woodfork whether two of the bags were his and
> Woodfork replied, "Yeah, those are mine."  Crawford searched
> the bags and found a laptop in each bag with a security tag
> labeled "Property of Grace Hollis" similar to the one found
> on the digital camera.
>
>       At trial, Woodfork testified in his own defense.  He
> said he did not know the laptops were stolen and he did not
> find it suspicious that Sandoval had them in her possession.

Lodgment 5 at 2-3.

On December 28, 2007, a jury convicted Petitioner of receiving stolen property. Lodgment 1 at 119. In a subsequent court trial on January 2, 2008, the state court made a true finding as to Petitioner's two prison priors. Id. at 120. The trial judge sentenced Petitioner to five years in prison: three years as the upper term limit for the receiving stolen property conviction and one year for each of Petitioner's two prior prison sentences. Id. at 122.

Petitioner appealed, arguing that insufficient evidence supported his conviction of receiving stolen property. Lodgment 2 at 7-16. On September 12, 2008, the Court of Appeal affirmed Petitioner's

conviction. Lodgment 5. Petitioner filed a petition for review in the California Supreme Court, challenging his conviction on the same ground. Lodgment 6. On December 10, 2008, the California Supreme Court summarily denied the petition for review without citation to authority. Lodgment 7. Petitioner then filed the instant Petition on July 15, 2009.

## SCOPE OF REVIEW

Title 28 of the United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Summary denials constitute adjudications on the merits. See Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002). Where there is no reasoned decision from the state's highest court, the Court

"looks through" to the underlying appellate court decision. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801-06 (1991).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003). "[A] federal habeas court may not issue a writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . . Rather, that application must be *objectively unreasonable*." <u>Id.</u> at 75-76 (emphasis added) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." <u>Williams</u>, 529 U.S. at 412.

Finally, habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>Wood v. Allen</u>, __ U.S. __, 2010 WL 173369, *2 (U.S. Jan. 20, 2010). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were

objectively unreasonable in light of the evidence presented in state court. See Miller-El, 537 U.S. at 340; see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). This Court will presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### A.  Sufficiency of the Evidence Claim

Petitioner challenges his conviction of receiving stolen property on the grounds that there was insufficient evidence he knew the property was stolen.[2] Pet. at 6, Pet'r Mem. at 7. Respondent counters that the jury reasonably could infer Petitioner's knowledge from the circumstantial evidence presented. Mem. P. & A. Supp. Answer ("Resp't Mem.") at 7-8. Petitioner refutes this argument in his Traverse, pointing to evidence that Sandoval gave him the property and that Petitioner did not behave in a furtive manner when confronted by the police officer. Traverse at 7-9.

The California Supreme Court summarily denied Petitioner's sufficiency of the evidence claim, so this Court will "look through" the silent denial to the Court of Appeal's reasoned decision. Ylst, 501 U.S. at 804. The Court of Appeal found there was sufficient evidence

---

[2] Petitioner was found guilty of receiving stolen property in violation of California Penal Code § 496(a). Lodgment 1 at 119. The trial judge instructed the jury that in order to establish this crime, the prosecution had to prove that Petitioner (1) "received, aided in selling, concealed or withheld from its owner, aided in concealing or withholding from its owner, property that had been stolen," (2) "knew that the property was stolen," and (3) "actually knew of the presence of the property." Lodgment 8 at 353. Petitioner does not dispute the jury's finding as to the first and third elements, so the only issue in dispute is the government's evidence that Petitioner knew the property was stolen. See Pet'r Mem. at 7-16.

to support the challenged conviction, explaining:

> Suspicious circumstances surrounding the possession of stolen property corroborate the inference that the property was received with knowledge of its stolen nature. (*People v. Lopez* (1954) 126 Cal.App.2d 274, 278.) Here the facts constitute suspicious circumstances based on Sandoval's behavior, which was inconsistent with her lifestyle, and Woodfork's offer to sell the property at an unreasonably low price. Sandoval's lifestyle was inconsistent with someone who would lawfully possess four laptop computers, a camera and an extra set of keys. This was not her first encounter with the law. She was previously convicted of selling drugs in 2005. She claimed she obtained the stolen property from an apartment once occupied by her son, rather than a retail location. The laptops were encased in matching black canvas bags but were received by Woodfork from a woman who routinely slept in her car. Sandoval told Woodfork that she needed to sell the items to raise money to fix her car, yet admitted that she spent money on alcohol the same day. Additionally, Woodfork received the stolen keys from Sandoval, a woman without a steady home or an operable car.
>
> Woodfork further contributed to the suspicious circumstances surrounding his possession of the stolen items. His contention that he possessed the laptops to help Sandoval program them for sale is inconsistent with the behavior of someone who lawfully obtained possession of electronic equipment. Additionally, he offered to sell one of the laptops to a complete stranger for half his initial price. Woodfork initially offered one of the laptops to Martinez for $1,000 but Martinez told Woodfork the price was too high. Woodfork then reduced his price to $500. The sale of property at a disproportionately low price is a suspicious circumstance. (*People v. Malouf* (1955) 135 Cal.App.2d 697, 706.) Substantial evidence supports a finding Woodfork received stolen property with knowledge it was stolen.

Lodgment 5 at 4-6.

The clearly established federal law regarding sufficiency of the evidence claims in the criminal context is set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). In <u>Jackson</u>, the Court held that the Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 324. "In making this determination, habeas courts must respect the

province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004). Once a state court fact finder has found a defendant guilty, federal habeas courts must consider the evidence "in the light most favorable to the prosecution." Jackson, 443 U.S. at 324.

Federal habeas courts also must analyze Jackson claims "with explicit reference to the substantive elements of the criminal offense as defined by state law." Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (quoting Jackson, 443 U.S. at 324 n.16). When assessing the evidence presented at trial, a reviewing court must conduct a thorough review of the state court record. Jones v. Wood, 114 F.3d 1002, 1013 (9th Cir. 1997).

The Ninth Circuit has made clear that "[a]n additional layer of deference is added to this standard by 28 U.S.C. § 2254(d), which obliges [Petitioner] to demonstrate that the state court's adjudication entailed an unreasonable application of the quoted Jackson standard." Briceno v. Scribner, 555 F.3d 1069, 1078 (9th Cir. 2009) (citing Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005)). Accordingly, it falls to this Court to determine whether the state appellate court opinion here "reflected an unreasonable application of Jackson . . . to the facts of this case." Juan H., 408 F.3d at 1275.

As an initial matter, it is apparent from the Court of Appeal's citation to People v. Johnson, 26 Cal. 3d 557, 578 (1980) that the state

court applied the Jackson standard in reviewing Petitioner's sufficiency of the evidence claim.³  The question, then, is whether it did so reasonably.  See Briceno, 555 F.3d at 1078; Juan H., 408 F.3d at 1274. Under California law, "[p]ossession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt."  People v. McFarland, 58 Cal. 2d 748, 754 (1962); People v. Anderson, 152 Cal. App. 4th 919, 950 (3d Dist. 2007) (confirming that the McFarland "slight corroboration" rule remains the governing law).  While California courts have been loath to expressly define the term "recent," appellate courts have upheld convictions where the interval was as long as four and a half months.  See People v. Anderson, 210 Cal. App. 3d 414, 422 (4th Dist. 1989) (four and a half months); see also People v. Reynolds, 149 Cal. App. 2d 290, 295 (2nd Dist. 1957) (six days); People v. Rodriquez, 177 Cal. App. 3d 174, 179 (5th Dist. 1986) (later that day).  In this case, Petitioner does not dispute that he, along with Sandoval, possessed four laptops, a digital camera, the tequila bottle, and Simpson's keys.  The government demonstrated at trial that police apprehended Petitioner, in possession of these items, roughly nine hours after they were stolen from the law firm.  See Lodgment 8 at 104 (Grace Hollis alarm sounded at about 2:00 a.m.) and 232-33 (Officer Wilson stopped Petitioner around 10:50 a.m.).  At that time, Petitioner had the stolen keys in his pocket and told Officer Crawford that two of the laptops were his own.

---

³ The standard set forth in Johnson mirrors and, in fact, cites to the standard set forth in Jackson.  Johnson, 26 Cal. 3d at 562, 575-78; see also People v. Cuevas, 12 Cal. 4th 252, 260-261 (1995) (citing both Jackson and Johnson as setting forth the applicable standard for sufficiency of the evidence claims).

Lodgment 8 at 234-35, 237. This admitted possession of the property just nine hours after it was stolen raises a strong inference of Petitioner's knowledge. Reyes, 52 Cal. App. 4th at 985.

In light of this inference, only "slight" additional corroborating evidence was needed to permit a guilty verdict. Id. Here, the record is replete with circumstantial evidence that Petitioner knew the laptops were stolen. As the Court of Appeal noted, Petitioner offered to sell a laptop to Martinez at half his initial asking price. See Lodgment 5 at 6; see also Lodgment 8 at 240 (Officer Crawford's testimony recounting what Martinez said at the scene). California courts have held that selling property at a disproportionately low price (as compared to its actual worth) may be considered a suspicious circumstance supporting an inference of knowledge of the property's stolen nature. Malouf, 135 Cal. App. 2d at 706. While Martinez later disclaimed having negotiated with Petitioner over price, the jury was entitled to credit Officer Crawford's testimony over Martinez's frequently conflicting and evasive testimony and it is not the province of this Court to discredit the jury's weighing of the evidence. See Walters, 45 F.3d at 1358.

Petitioner's explanation for why he was with Sandoval and in possession of the laptops also is suspicious and contradictory. "[T]he law is [] clear that possession of stolen property, accompanied by no explanation, or an unsatisfactory explanation, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. People v. Perez, 40 Cal. App. 3d 795, 799 (3d Dist. 1974) disapproved of on other grounds by People v. Allen, 21 Cal. 4th 846 (1999). In this case, Petitioner claimed that all of the items were Sandoval's and he was just helping her. Lodgment

8 at 294, 297-98. But a reasonable jury could find it implausible for Petitioner to believe a woman who had just been evicted from a rehabilitation facility due to addiction problems, lived in her car, and had no money could legally have come into possession of four laptops in matching bags. Sandoval's explanation that she obtained the laptops from her son, who was incarcerated for theft (id. at 257, 322), does not lend any credibility to her story. Moreover, Petitioner understood that Sandoval wanted him to help program the computers, or at least show her how to use them, so she could sell at least one of them in El Cajon. Id. at 299, 321, 324-25. However, Petitioner then claimed that, though he and Sandoval took the computers first to her car then on the trolley to El Cajon, he never opened the computers, let alone tried to use or program them. Id. at 298, 323-25. And, though he originally said they were going to sell the laptops, he later contradicted his own testimony and said he did not know if Sandoval was selling them and Officer Crawford was mistaken when he said Petitioner told him at the scene that Sandoval was going to sell them. Id. at 322-25. A reasonable jury could have concluded that these unsatisfactory explanations supported an inference that Petitioner knew the laptops were stolen. See Perez, 40 Cal. App. 3d at 799.

The same is true of the conflicting evidence of whether Petitioner opened and looked at the laptops. Petitioner contradicted his own testimony by first stating that he never opened the laptops and then, a few minutes later, saying "I opened the laptop only to see if it opened, if it will turn on." Lodgment 8 at 323, 327. This discrepancy is significant because all of the laptops bore inventory control stickers - stickers Petitioner presumably would have seen had he opened the laptop - indicating that they were the property of Grace-Hollis (id.

at 111-12), not Sandoval or her son. Martinez's corroborating testimony that Petitioner showed him the computer (<u>id.</u> at 209-10) suggests that of the two, Petitioner's first statement that he never opened the laptops is the untrue one. Viewing the evidence in the light most favorable to the verdict, this evidence supports the inference that Petitioner knew the laptops were stolen.

Finally, while Sandoval claims she never told Petitioner the computers were stolen (<u>id.</u> at 269, 276), the jury was presented with evidence tending to impugn her credibility. As previously noted, habeas courts must respect the jury's role of assessing witness credibility. <u>See</u> <u>Walters</u>, 45 F.3d at 1358. Here, Sandoval admitted that she pled guilty to receiving stolen property in relation to this incident and that she had a previous felony conviction. Lodgment 8 at 276, 279. She then acknowledged that Petitioner is her boyfriend and it is "common sense" that she would want to protect him. <u>Id.</u> at 278. Having already pled guilty, the jury could conclude that Sandoval had nothing to lose in protecting Petitioner. Moreover, she testified that she drank at least a bottle and a half of vodka and some tequila the day of the incident. <u>Id.</u> at 283-86. A reasonable jury could have concluded that Sandoval's recollection of events was impaired by her intoxication and skewed by her relationship with Petitioner.

In light of this evidence, "a rational trier of fact could have found proof of guilt beyond a reasonable doubt" that Petitioner received stolen property with knowledge that the property was stolen. <u>Jackson</u>, 443 U.S. at 324. This Court, therefore, concludes that Petitioner's conviction of receiving stolen property was supported by sufficient evidence. <u>Jackson</u>, 443 U.S. at 324. Accordingly, the state court's analysis and decision denying the insufficiency claim was not "contrary

to or an unreasonable application of Federal law." 28 U.S.C. § 2254(d)(1). The Court, thus, **RECOMMENDS** that Petitioner's habeas petition be **DENIED.**

**B.   Request for an Evidentiary Hearing**

Petitioner has filed two motions requesting an evidentiary hearing. See Doc. Nos. 15 & 20. In both, Petitioner argues that because the state court deprived him of a hearing on his insufficiency of the evidence claim during his direct appeal, the state court's factual findings are unreasonable and not binding on this Court. Id. He, therefore, contends that he is entitled to an evidentiary hearing. Id. At the hearing, he proposes to offer exculpatory evidence including his prescription glasses, "house keys," and testimony and/or evidence from Officer Crawford, Sandoval, and himself regarding this exculpatory evidence. Id. It is unclear what Petitioner believes the glasses will show or why it appears Petitioner wishes to demonstrate that there were two sets of keys. Id.

In order to receive an evidentiary hearing in federal court, Petitioner first must show that he "has not failed to develop the factual basis of the claim in the state courts." Insyxiengmay v. Morgan, 403 F.3d 657, 670 (9th Cir. 2005); see also Schriro v. Landrigan, 550 U.S. 465, 474 n.1 (2007) (confirming that "AEDPA generally prohibits federal habeas courts from granting evidentiary hearings when applicants have failed to develop the factual bases for their claims in state courts"). If Petitioner fails to satisfy this threshold test, he must demonstrate that he meets one of the two narrow exceptions stated in 28 U.S.C. § 2254(e)(2)(A)-(B). Id. On direct appeal in this case, Petitioner offered no new facts outside of those present in the trial record to support his sufficiency of the evidence

claim. In <u>Earp v. Ornoski</u>, 431 F.3d 1158, 1168-69 (9th Cir. 2005), the prisoner was afforded a federal evidentiary hearing after showing that he supported his state habeas petition, which alleged prosecutorial misconduct, with signed declarations from a witness, a defense investigator, and his trial attorney as well as a transcript of part of the prosecutor's interview with the above witness. Here, Petitioner proffered no evidence that had not been considered by the jury at trial nor did he suggest that he was prevented from presenting evidence that would entitle him to relief. See <u>Insyxiengmay</u>, 403 F.3d at 671 (granting federal evidentiary hearing where defendant was precluded by the state court from developing the state court record). Thus, the Court finds that Petitioner failed to develop the factual basis for his claim.[4]

The statutory exceptions do not help Petitioner. 28 U.S.C. § 2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
>     (A) the claim relies on--
>
>         (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>         (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>     (B) the facts underlying the claim would be

---

[4] There also is no evidence that Petitioner requested an evidentiary hearing in state court. C.f. <u>Estrada v. Scribner</u>, 512 F.3d 1227, 1235 n.7 (9th Cir. 2008) (finding the petitioner did develop the factual basis for his claims where the record shows the petitioner properly sought, and was denied, an evidentiary hearing in both state and federal court).

>sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Petitioner has not cited to a new constitutional rule and he does not suggest that the alleged "exculpatory evidence" (the prescription glasses and extra keys and testimony related thereto) could not have been discovered previously. Id. Moreover, Petitioner's motion for an evidentiary hearing in no way explains how presentation of this "exculpatory evidence" would have prevented a reasonable factfinder from finding him guilty of receiving stolen property. Id.; see also Schriro, 550 U.S. at 475 ("If district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts"). As such, these exceptions do not apply.[5]

Accordingly, the Court finds that an evidentiary hearing is not warranted in this case. Petitioner's requests are **DENIED**.

**C.  Request for Appointment of Counsel**

On November 6, 2009, and again on December 18, 2009, Petitioner filed requests for appointment of counsel. This Court previously denied a request for counsel for Petitioner in this case. Doc. No. 8.

As the Court explained in its previous order, the Sixth Amendment

---

[5] As described in Insyxiengmay, even if Petitioner had satisfied the threshold requirement, he still would not be entitled to an evidentiary hearing unless he also met one of the factors set forth in Townsend v. Sain, 372 U.S. 293(1963), and made a colorable allegation that, if proved at the evidentiary hearing, would entitle him to habeas relief. The Court does not find that Petitioner's allegations are sufficient to surmount these hurdles either.

right to counsel does not extend to federal habeas corpus actions by state prisoners. See McClesky v. Zant, 499 U.S. 467, 495 (1991); Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996) (noting that there currently exists no constitutional right to appointment of counsel in habeas proceedings); Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986). However, courts may appoint counsel for financially eligible habeas petitioners seeking relief pursuant to 28 U.S.C. § 2254 where "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); Chaney, 801 F.2d at 1196. Whether or not to appoint counsel is a matter left to the court's discretion, unless an evidentiary hearing is necessary. See Knaubert v. Goldsmith, 791 F.2d 722, 728-30 (9th Cir. 1986) (explaining that the interests of justice require appointment of counsel when the court conducts an evidentiary hearing on the petition).

The court's discretion to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1), may be exercised only under "exceptional circumstances." Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991).[6] "A finding of exceptional circumstances requires an evaluation of both the 'likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.' Neither of these factors is dispositive and both must be viewed together before reaching a decision." Id. (quoting Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986)).

In its prior order, this Court concluded that Plaintiff had a sufficient grasp of his case and the legal issues involved and has been able to adequately articulate the basis of his claims without legal

---

[6] The Terrell court cited to 28 U.S.C. § 1915(d), but the legislature subsequently renumbered this section as 28 U.S.C. § 1915(e)(1).

assistance. Doc. No. 8.  The Court further found that, while Petitioner has asserted sufficient facts to state a claim for federal habeas relief, he has not established a likelihood of success on the merits. Id.  Nothing in Petitioner's two newest requests alters this Court's determination.

In his November request, Petitioner argues that an August 8, 2009 prison riot resulted in restricted access to the law library, which in turn, impaired Petitioner's ability to meet Court deadlines.  Doc. No. 13.  He further contends that deprivation of library access resulted in Petitioner missing an opportunity to adjudicate a meritorious defense and losing the option of filing motions.  Id.  However, Petitioner does not specify which deadlines he missed or what defense he wished, but was unable, to raise.  Given that Petitioner timely filed a traverse and has been able to file seven motions in this case, the Court finds that these reasons do not constitute the requisite "exceptional circumstances" necessary to justify the appointment of counsel.  Terrell, 935 F.2d at 1017.

The Court also is not persuaded by the reasons set forth in Petitioner's December request for counsel.  There, Petitioner argues that the August 2009 riot and resulting lockdown negatively affected Petitioner's ability to obtain the addresses of counsel who might agree to represent him on a *pro bono* basis.  Doc. No. 18.  He also claims that he would require counsel if the Court granted his request for an evidentiary hearing.  As to the first argument, the Court finds no authority justifying the appointment of counsel based on a prisoner's inability to retain his own counsel.  The second contention is moot as this Court has determined that an evidentiary hearing is not necessary in this case.

For the foregoing reasons, the Court concludes that this habeas proceeding does not present "exceptional circumstances" justifying the appointment of legal counsel. Terrell, 935 F.2d at 1017. Accordingly, Petitioner's motions for appointment of counsel are **DENIED** without prejudice.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **February 23, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later that **March 16, 2010.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED: February 2, 2010

BARBARA L. MAJOR
United States Magistrate Judge